
FILED

MAR 2 0 2020

Clerk, U.S. District Court
District Of Montana
Missoula

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
MISSOULA DIVISION

| | |
|---|---|
| BRENDAN E. ADAMS, an individual, | CV 18–148–M–DLC |
| Plaintiff and Counter Defendant, | |
| vs. | ORDER |
| HOWARD C. ROBERTS, an individual, | |
| Defendant and Counter Claimant. | |

On December 10, 2019, this Court granted Defendant and Counter Claimant Howard C. Robert's motion in limine. (Doc. 22.) Due to Adams' failure to provide any expert closure reports pursuant to Federal Rule of Civil Procedure 26(a)(2), this Court held that Adams "may not introduce any testimony or evidence from his care providers attributing the cause of his injuries to an altercation with Roberts. Adams also may not introduce testimony as to care, treatment and prognosis where such testimony" requires expert knowledge. (Doc. 22 at 5.) Though trial has been delayed due to the Court's general administrative order, the Court would like to timely address the evidentiary issues that emerged in the parties final pretrial filings. Specifically, (1) to what extent Adams himself may testify attributing the cause of his injuries to the altercation with Roberts; (2) to what extent Adams may introduce records from his health care providers

1

pertaining to his treatment for injuries following the altercation with Roberts; and (3) whether Adams may introduce any new evidence produced on March 10, 2020. (Doc. 33.)

## I. Adam's Testimony

Roberts argues that Adams should not be allowed to circumvent the Court's Order ruling on his motion in limine by testifying that Roberts caused his injuries. (Doc. 33 at 1.) Roberts is partially correct. Consistent with the Court's Order (Doc. 22), Adams will not be permitted to testify to matters that require expert knowledge. This does not preclude Adams from testifying, in his own words, as to his personal experience of his injuries. Adams may attribute the cause of those injuries where it is within a layman's scope of knowledge. *Bleek v. Supervalu, Inc.*, 95 F. Supp. 2d 1118, 1121 (D. Mont. 2000).

As an example, hypothetically speaking, Adams may testify that after he was punched in the chest, he experienced pain, saw a doctor, learned that he had a cracked rib, and that it took two months to heal. This information is derived from Adams' personal experience, and it requires no expert to understand that force from a punch can cause a cracked rib. On the other end of the spectrum, Adams would be precluded from offering testimony regarding a complex bodily response that caused an underlying nervous system disorder to increase in severity sometime after the event. Similarly, Adams will not be permitted to testify as to what his

doctor told him was the permanence of his injuries. *See* Fed. R. Evid. 802. Again, however, Adams may testify in his own words regarding his current physical and mental condition—despite Roberts' objections to Adams' interrogatory response.[1] (*See* Doc. 33 at 5.) Beyond these broad parameters—and recognizing that there is play within the joints of Federal Rules of Evidence 602 and 701—the Court will wait until it hears testimony at trial to make further rulings consistent with this Order.

## II. Medical Records

Adams cites *McCormack v. Andres* to argue that the Court's Order does not preclude him from offering medical records to show that Adams received medical treatment for certain injuries. (Doc. 27 at 8 (citing *McCormack v. Andres*, 185 P.3d 973, 979 (Mont. 2008).) The Montana Supreme Court's opinion in *McCormack* addressing a Montana district court's evidentiary ruling consistent with the Montana Rules of Evidence does not control the outcome here. Nor did

---

[1] Roberts argues that Adams should be precluded from offering any testimony about his physical or mental condition because, instead of specifically responding to Roberts' interrogatory requesting such information, Adams referencing disclosed medical records. Roberts contends that this response exceeds the scope of Federal Rule of Civil Procedure 33(d) which allows a party to reference *its own* business records in lieu of responding. Although it is debatable whether one's own medical records fall within the scope of 33(d), *see Vaught v. Clark*, 2012 WL 5381518, *3 (E.D. Cal. Oct. 31, 2012), there is little harm in Adams' response here. If Roberts felt that Adams' reference to the medical records was insufficient, Roberts ought to have brought a motion to compel. And, because of the recently disclosed evidence and the temporary trial delay, as explained *infra*, the Court will permit the parties to engage in limited additional discovery. If Roberts believes that Adams' response to Interrogatory 10 is inadequate, he may engage in additional discovery relevant to this matter.

*McCormack* address the same issue. There, the Court determined that the type of injuries conveyed in the medical report were sufficiently within the plaintiff's scope of knowledge such that the district court did not abuse its discretion in determining that these records were authentic. *Id.* The issue here is whether Adams may end run the Court's Order excluding expert testimony by permitting those experts to testify through their records and reports. The Court will not allow Adams to do so. Again, consistent with the Court's ruling above, Adams will be allowed to testify that he sought medical care. Adams will be permitted to testify, in his own words, as to what treatment he received for his injuries. Adams will not be allowed to testify as to his future medical needs and expenses, as this assessment goes beyond the layman's knowledge.

### III. Newly Disclosed Evidence

On March 10, 2020, counsel for Adams disclosed, for the first time, documents, video recordings, photographs, and audio recordings relevant to the altercation. Roberts points to his deposition of Adams on July 18, 2019 where Adams indicated that these documents had already been provided to counsel. (Doc. 33 at 11.) Counsel for Adams claims that he first realized that he did not have these materials very shortly before his March 10, 2020 disclosure to Roberts' counsel. (*Id.* at 10.) Roberts argues that someone is misrepresenting the truth and regardless, these materials were in existence at the time of the altercation and

should have been produced during the window of discovery. (*Id.* at 11.) He argues the proper remedy is exclusion under Rule 37(c).

The Court declines Robert's invitation to attempt to solve who knew what, when. Clearly, the late production of these materials was error. However, given the delay to trial, there is opportunity to render this error harmless. Where an error is harmless, the Court has discretion to admit the evidence under an exception to Federal Rule of Civil Procedure 37(c)'s exclusion requirements and allow the evidence to serve the truth-seeking purpose of trial. The Court will allow for limited additional discovery pertaining to these exhibits. Roberts may depose Adams at Roberts' own cost for the purpose of learning more about these exhibits and learning more about Adams' current mental and physical condition. No other discovery will be permitted. The motions deadline will not be extended. The Court will schedule a status update in the coming weeks to reset trial after May 1, 2020.

Dated this 20th day of March, 2020.

Dana L. Christensen, District Judge
United States District Court