IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
MISSOULA DIVISION

| | |
|---|---|
| BRENDAN E. ADAMS, an individual,<br><br>Plaintiff and Counter Defendant,<br><br>vs.<br><br>HOWARD C. ROBERTS,<br>an individual,<br><br>Defendant and Counter Claimant. | CV 18–148–M–DLC<br><br><br>FINDINGS OF FACT,<br>CONCLUSIONS OF LAW, AND<br>ORDER ON PUNITIVE DAMAGES |

Pursuant to Federal Rule of Civil Procedure 58, this Court ordered the Clerk to promptly enter judgment after the Jury rendered its verdicts in this case, which she did on May 10, 2021. (Docs. 97, 98.) Now, having complied with its obligation to exercise "all reasonable speed in formulating and entering the judgment when the case has been decided," Fed. R. Civ. P. 58 Advisory Comm. Notes (1963), the Court turns to considering the factors found at Montana Code Annotated § 27-1-221(b) to determine whether the Jury's award of punitive damages should be increased, decreased, or left as it stands, Mont. Code Ann. § 27-1-221(c).

After entering the following findings of fact and conclusions of law, the Court AFFIRMS the Jury's punitive damage award of $750,000.

## FINDINGS OF FACT

1. The Jury found that Plaintiff and Counter Defendant Brendan E. Adams wrongfully imprisoned Defendant and Counter Claimant Howard C. Roberts by intentionally and aggressively blocking Roberts' ability to cross over an easement that he had permission to use.  Further, the Jury found that Roberts was justified in his use of force to protect himself from harm when Adams approached him on a four-wheeler, "side-by-side"-type vehicle.  Adams admitted that his conduct on the day in question had nothing to do with an effort to execute a citizen's arrest based on some perceived wrongdoing on the part of Roberts.  Thus, Adams trapped Roberts and prevented him from accessing the public road based solely on Adams' unfounded belief that he was the gatekeeper of an easement that crossed his property.

2. The Jury heard evidence that Adams maintained his efforts to prevent Roberts from exiting the property at issue even after the initial altercation between the two men concluded.  After Roberts retreated away from the north end of the easement—the end closest to the public road—toward the south end of the easement and onto the dominant landowner's property, previously undisclosed photos revealed that Adams moved into the middle of the easement road, where he sat in a lawn chair, talking on the phone and reviewing easement documents.  Further, while the testimony was unclear as to who exactly moved the four-wheeler

after the initial altercation—whether it was Adams himself or his son—the four-wheeler ended up positioned directly in the middle of the road blocking the south end of the easement.

3.  The Jury found that Adams intentionally restrained Roberts against his will.  (*See* Jury Inst. No. F-34.)  No evidence suggested that Adams' initial blocking of the north end of the easement with his four-wheeler, nor his decision to sit in the middle of the easement road once Roberts retreated back down to the south end of the easement, were events of mistake or negligence.

4.  Neither party presented evidence or argument that Adams somehow profited from his wrongful conduct.

5.  The Jury awarded Roberts $100,000 in compensatory damages on his false imprisonment counterclaim.  The Jury heard evidence from Roberts' daughter, Lindsay, that her father has changed dramatically since he was falsely imprisoned by Adams on July 12, 2017.  Roberts, too, testified that he no longer enjoys activities and family functions like he did before he was falsely imprisoned by Adams.

6.  Adams testified that he is retired from his career as an insurance broker after he sold his business.  Adams' son, Jonathan Adams, testified that his father had recently purchased a ranch, on which Johnathan Adams now works as the foreman.  Much evidence was also presented as it relates to the two parcels of

property that Adams owns at Lake Mary Ronan in Montana. Otherwise, and despite the Court's invitation to the parties to proffer further testimony after the Jury determined punitive damage liability, no additional testimony was provided as it relates to Adams' net worth.

7. At trial, the parties proffered no evidence about previous awards of punitive damages against Adams for false imprisonment claims.

8. Through impeachment, Roberts proffered evidence of a previous incident involving a confrontation between Adams and his neighbor's guests, in which Adams wielded a firearm and threatened to shoot one of the guests if he stepped onto Adams' property.

9. The Jury listened carefully to the evidence presented over the course of a week-long trial. There is no indication that the Jurors acted out of passion or prejudice. The ratio between the Jury's punitive damage award and its compensatory damage award is 7.5-to-one.

## CONCLUSIONS OF LAW

1. Based on Adams' intentional, aggressive, and unjustified false imprisonment of Roberts, the Court concludes that Adams' wrongdoing in this case was reprehensible. Mont. Code Ann. § 27-1-221(7)(b)(i).

2. Adams' persistence in trapping Roberts even after the initial altercation demonstrates that his wrongdoing was extensive. Mont. Code Ann. § 27-1-221(7)(b)(ii).

3. Adams' false imprisonment of Roberts was intentional. Mont. Code Ann. § 27-1-221(7)(b)(iii).

4. The Court concludes that the fourth statutory factor, "the profitability of the [party's] wrongdoing," is inapplicable to the facts of this case. Mont. Code. Ann. § 27-1-221(7)(b)(iv).

5. In view of the evidence presented regarding Roberts' mental pain and suffering caused by Adams' conduct, the Jury's award of $100,000 in compensatory damages is justified. Mont. Code Ann. § 27-1-221(7)(b)(v).

6. Montana Code Annotated § 27-1-221(7)(a) requires that the punitive damage determination—whether by judge or jury—must take into consideration the wrongdoer's "financial affairs, financial condition, and net worth." It is the wrongdoer's burden to produce evidence of his net worth. *Gurnsey v. Conklin Co., Inc.*, 751 P.2d 151, 158 (Mont. 1988). If he fails to do so, the wrongdoer cannot "avail himself of the protection provided by § 27-1-220(3)."[1] Such is the case here. Adams' net worth is unknown because he chose not to present evidence

---

[1] "An award for punitive damages may not exceed $10 million or 3% of a defendant's net worth, whichever is less." Mont. Code Ann. § 27-1-220(3).

concerning his assets. What is known is simply that he is a retired professional who sold his business, that he owns parcels of land near a Montana lake, and recently purchased a ranch. Thus, because Adams provided no accurate calculation of his net worth, the Court is left to consider his actions which led to a $100,000 award of actual damages; these actions justify an award of punitive damages. Mont. Code Ann. § 27-1-221(7)(b)(vi); *c.f. Cartwright v. Equitable Life Assur. Soc. of U.S.*, 914 P.2d 976, 998–99, 1001 (Mont. 1996).

7. Considering the lack of evidence regarding previous punitive damage awards against Adams for false imprisonment, the Court concludes that this factor does not apply here. Mont. Code Ann. § 27-1-221(7)(b)(vii).

8. It is possible that criminal sanctions could be brought against Adams based on his behavior with his neighbor's guests. Adams' conduct on this other occasion could be construed as false imprisonment by restricting another's freedom of movement through threats. Mont. Code Ann. § 27-1-221(7)(b)(viii).

9. After listening to the evidence, weighing the applicable factors under § 27-1-221(7)(b), and assessing the credibility of the parties and the witnesses, the Court is convinced, like the Jury, that a sizeable award of punitive damages against Adams is warranted. The single-digit multiplier at issue here comports with due process while still achieving the goals of punishment and deterrence. *State Farm*

*Mut. Auto Ins. Co. v. Campbell*, 538 U.S. 408, 410 (2003); Mont. Code Ann. § 27-1-220(1).

## ORDER

After considering each factor enumerated in § 27-1-221(7)(b),

IT IS ORDERED that the Jury's punitive damages award of $750,000 is AFFIRMED.

DATED this 18th day of May, 2021.

/s/ Dana L. Christensen
Dana L. Christensen, District Judge
United States District Court