Stephen D. Bell
DORSEY & WHITNEY LLP
125 Bank Street
Millennium Building, Suite 600
Missoula, Montana 59802
bell.steve@dorsey.com

Tyson A. McLean
KRIS A. MCLEAN LAW FIRM, PLLC
2315 McDonald Ave., Suite 106
Missoula, Montana 59801
Phone: (406) 396-9367
tyson@krismcleanlaw.com

*Attorneys for Plaintiff Brendan E. Adams*

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
MISSOULA DIVISION

| | |
|---|---|
| BRENDAN E. ADAMS, an individual, | CV 18-148-M-DLC |
| Plaintiff and Counter Defendant, | |
| v. | **PLAINTIFF'S BRIEF IN SUPPORT OF POST-TRIAL MOTION** |
| HOWARD C. ROBERTS, an individual, | |
| Defendant and Counter Claimant. | |

## I.   INTRODUCTION

Plaintiff and Counter Defendant Brendan E. Adams ("Adams") respectfully submits this brief in support of his motion seeking an order:  (i) granting Judgment as a Matter of Law pursuant to Federal Rule of Civil Procedure 50(b); (ii) granting a new trial pursuant to Rule 59(a); or (iii) amending the judgment under Rule

59(e).  Adams also requests that the Court extend the automatic stay of execution on the judgment until 30 days after the Court rules on Adams' post-trial motion.

The Court should grant judgment as a matter of law, or, alternatively, grant a new trial because the evidence introduced at trial is manifestly contrary to the jury's verdict and that the jury's verdict shows evident bias.  The evidence shows that Roberts was never restrained because he had access to an unobstructed egress; and, even if Roberts was restrained, there is not legally sufficient evidence that Adams intentionally did so.

If the Court does not grant judgment as a matter of law or a new trial, then the Court should vacate or reduce the compensatory and punitive damages awards under Rule 59 and relevant state and federal law.

## II.    ARGUMENT

### A.    The Court Should Enter Judgment as a Matter of Law in Favor of Adams on Roberts' False Imprisonment Claim.

Per Federal Rule of Civil Procedure 50(a)(1), judgment as a matter of law is appropriate if "a party has been fully heard on an issue during a jury trial and the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue."[1]  Judgment as a matter of law is "proper if

---

[1]  Adams initially moved for judgment as a matter of law under Rule 50(a) at the close of Roberts' case-in-chief.  The Court denied that motion and therefore it is appropriate for Adams to bring this renewed motion for judgment as a matter of law under Rule 50(b).

the evidence, construed in the light most favorable to the nonmoving party, permits only one reasonable conclusion, and that conclusion is contrary to the jury's verdict." *Pavao v. Pagay*, 307 F.3d 915, 918 (9th Cir. 2002).

There is no legally sufficient basis to conclude that Adams falsely imprisoned Roberts because Roberts did not have the right to use the easement road.  "The gravamen of a false imprisonment claim is the deprivation of liberty of movement or freedom to remain in the place of one's lawful choice." *Hughes v. Pullman*, 2001 MT 216, ¶ 21, 306 Mont. 420, 424–425, 36 P.3d 339, 343.  Here, unrefuted evidence shows that Roberts was not at liberty to use the easement road. Lance Melton testified that he revoked Roberts' right to use the easement road by telling Roberts "do not go there".[2]  Thus, there is no legally sufficient basis for Roberts' false imprisonment claim because:  (i) false imprisonment requires deprivation of liberty of movement, and (ii) here, Roberts was not at liberty to use the easement road.

There is no legally sufficient basis to conclude that Adams intentionally restrained Roberts.  Roberts alleges he was restrained by two sequential acts:  (i) when he encountered a four-wheeler at the north end of the easement; and (ii)

---

[2]  At trial, Roberts suggests he used the easement based on an email from Lance Melton to Adams regarding the easement.  But it does not matter what Lance Melton emailed to Adams.  Roberts had no knowledge of that email at the time in question and only knew he did not have permission to access Lance Melton's property via the easement over Adams' property.  Roberts went there despite the express revocation of his license.

when, after retreating off the easement road, he then encountered a four-wheeler at the south end of the easement road.  The issue with the first alleged restraint is that Roberts does not prove that Adams intended to park the four-wheeler as a restraint. Adams' unrefuted testimony shows that when he got off his four-wheeler initially at the north end of the easement road he was dazed from the physical altercation with Roberts.  Even if Roberts' testimony showed that the four-wheeler did obstruct the road, Roberts did not testify that Adams intended this result. Regarding the second alleged restraint, Roberts did not produce any evidence that Adams was responsible for parking the four-wheeler at the south end of the easement road.  Indeed, the evidence indicates that a member of Adams' family placed the four-wheeler in the easement road, and (during the time that the vehicle obstructed the easement road) Brendan Adams was farther down the road sitting in a chair attempting to recover from the beating.  Thus, vis-à-vis both of the alleged restraints, there is no legally sufficient basis to conclude that Adams intentionally restrained Roberts.[3]

Additionally, there is no legally sufficient basis to conclude that Adams restrained Roberts because the evidence shows that Roberts, at all times, had

---

[3]  Notably, in his closing argument, Roberts' counsel repeatedly referred to Adams' and the rest of his family as the perpetrators of the alleged tortious acts. Attorney Wagner stated that "they" (i.e., the Adams family members) moved the four-wheelers, and they blocked the easement, but that the jury could find Brendan Adams liable for such conduct.

access to an unobstructed egress, which he opted not to use because he wanted to wait on the neighboring property until law enforcement arrived.  Lance Melton testified that he told Roberts about another road that would go to Happy Trails Lane which is a county designated road that could then be used to go back over the top of the hill down along the lake and out on the county road.  <u>Roberts chose not to use it</u>.  At 4:13 P.M., Roberts stated to Melton he was not going anywhere until the authorities arrived.  Roberts testified that he willfully stayed so that he could tell law enforcement his side of the story when they arrived because he had concerns about what the Adams' family would tell investigating officers.

The Court should grant judgment as a matter of law on Roberts' punitive damages claim.  All elements of the claim for punitive damages must be proven by clear and convincing evidence, which "is more than a preponderance of evidence but less than beyond a reasonable doubt."  Mont. Code Ann. § 27-1-221(5).  Clear and convincing evidence means that there can be no serious or substantial doubt about the correctness of the conclusions drawn from the evidence.  *Id.*  Here, even if the Court does not grant judgment as a matter of law on Roberts false imprisonment claim, the Court should nonetheless grant judgment on Roberts' punitive damages claim based on the arguments above.  That is, even if Roberts has proven his claim by a preponderance of evidence, Roberts' lack of evidence regarding intent and whether Adams parked the four-wheeler at the south end of

the easement, and Roberts' failure to refute that he had access to an alternative

egress, establish at least serious doubt as to whether Adams intentionally restrained

Roberts.

**B.    The Court Should Grant Adams a New Trial.**

Rule 59(a) states, "[a] new trial may be granted . . . in an action in which

there has been a trial by jury, for any of the reasons for which new trials have

heretofore been granted in actions at law in the courts of the United States."  Fed.

R. Civ. P. 59(a)(1).  "Rule 59 does not specify the grounds on which a motion for a

new trial may be granted."  *Molski v. M.J. Cable, Inc.,* 481 F.3d 724, 729 (9th Cir.

2007) (quoting *Zhang v. Am. Gem Seafoods, Inc.,* 339 F.3d 1020, 1035 (9th Cir.

2003)).  Rather, the court is "bound by those grounds that have been historically

recognized."  *Zhang,* 339 F.3d at 1035.

Historically recognized grounds include, but are not limited to, claims "that

the verdict is against the weight of the evidence, that the damages are excessive, or

that, for other reasons, the trial was not fair to the party moving."  *Molski,* 481 F.3d

at 729 (quoting *Montgomery Ward & Co. v. Duncan,* 311 U.S. 243, 251 (1940).

"The trial court may grant a new trial only if the verdict is contrary to the clear

weight of the evidence, is based upon false or perjurious evidence, or to prevent a

miscarriage of justice."  *Passantino v. Johnson & Johnson Consumer Prods.,* 212

F.3d 493, 510 n. 15 (9th Cir. 2000).  Upon the Rule 59 motion of the party against

whom a verdict has been returned, the district court has "the duty . . . to weigh the evidence as [the court] saw it, and to set aside the verdict of the jury, even though supported by substantial evidence, where, in [the court's] conscientious opinion, the verdict is contrary to the clear weight of the evidence." *Molski,* 481 F.3d at 729 (quoting *Murphy v. City of Long Beach,* 914 F.2d 183, 187 (9th Cir. 1990).

The Court should grant a new trial because the jury returned an inconsistent verdict. A logically inconsistent verdict justifies a new trial.  *D.R. Four Beat All., LLC v. Sierra Prod. Co.*, 218 P.3d 827, 837–38 (Mont. 2009) ("When a jury's verdict is logically impossible and simply cannot be reconciled with the evidence, argument and legal theories presented at trial, the constitutional rights of the litigants to a fair trial requires that a new trial be ordered.").

Here, the jury's verdict was inconsistent because the jury found that Roberts did not commit a battery, but that Roberts did justifiably use force against Adams. For his justifiable use of force claim, Roberts testified that, because he thought Adams was going to hit him with a four wheeler, Roberts extended his arm and struck Adams in the chest and neck so that Adams could not come closer.  Given that the jury found that such action constituted a justifiable use of force, that jury should have also found that conduct constituted a battery.  I.e., Roberts claims he justifiably used force when he intentionally made contact with Adams in a manner intended to impair Adams from striking Roberts with a four wheeler—that conduct

7

satisfies all of the elements of battery.  It is logically inconsistent for the jury to

find both that Roberts justifiably used force and did not commit a battery.  For the

justifiable use of force verdict to make sense, the jury should have found that

Roberts did commit a battery but that Adams was not entitled to any damages.

Because the jury's verdict is inconsistent, the Court should order a new trial.  *See*

*Mont. Bank of Red Lodge, N.A. v. Lightfield,* 237 Mont. 41, 49, 771 P.2d 571,

576–577 (1989) (affirming a district court's decision to grant a new trial where the

jury findings were inconsistent and it was too difficult to speculate as to how the

jury arrived at its conclusions); *Abernathy v. Eline Oil Field Servs., Inc.,* 200 Mont.

205, 217, 650 P.2d 772, 779 (1982) (holding that when two conflicting verdicts are

reached from the same evidence, a new trial is required); *Rudeck v. Wright,* 218

Mont. 41, 709 P.2d 621, 624 (1985) (affirming district court's order granting new

trial because the jury's verdict was inconsistent).

Next, the evidentiary arguments supporting judgment notwithstanding the

verdict support granting a new trial under Rule 59. i.e., the weight of the evidence

clearly shows:  (i) Roberts had his "license" to use the easement road revoked and

therefore obstructing his passage thereon cannot constitute false imprisonment; (ii)

even if obstructing the easement road could constitute false imprisonment, Roberts

has not produced evidence sufficient to establish that Adams intentionally

restrained Roberts; (iii) Roberts was never restrained because he had unobstructed

access to an egress that he chose not to use; and (iv) Roberts did not prove the elements of his false imprisonment claim by clear and convincing evidence.

Notably, Even if the Court denies Adams' motion for judgment notwithstanding the verdict under Rule 50, the Court should grant Adams' motion for a new trial under Rule 59 based on the evidentiary issues noted in the paragraph above.  The standard for granting a new trial under Rule 59 is less strict than that for judgment as a matter of law under Rule 50(b), for "a new trial motion may be granted even if there is substantial evidence to support the verdict."  *Bevevino v. Saydjari*, 574 F.2d 676, 683 (2d Cir. 1978).  Likewise, in a new trial motion, a court "is not required to take that view of the evidence most favorable to the verdict-winner," as in motions for judgment as a matter of law.  *Fine v. Sovereign Bank*, 671 F. Supp. 2d 219, 224 (D. Mass. 2009) (quoting 11 Wright, Miller & Kane, Federal Practice and Procedure § 2806, at 65-66).

The Court should also grant a new trial because the damages awarded by the jury are excessive.  One key difference between the Rule 50 standard and the standard for a new trial under Rule 59 is that "[a] trial judge should grant a new trial if . . . damages are excessive."  *Lewis v. Elliot*, 628 F. Supp. 512, 516 (D.D.C. 1986); *see also* CA 25-11-102(5) (stating that one of the bases for vacating a verdict and granting a new trial is "excessive damages appearing to have been

given under the influence of passion or prejudice"). Here, the damages are clearly

excessive (as shown in more detail in the next section of this brief).

**C.    The Court Should Amend the Judgment under Rule 59(e).**

Rule 59(e) permits the Court to "alter or amend a judgment." Here, the

Court should amend the jury's verdict by vacating or reducing, via remittitur or

otherwise, the jury's compensatory and punitive damages awards.

**1.    The Court should vacate or reduce the compensatory damages award.**

Even with liability established, the amount of damages must be reasonable.

*Topco, Inc. v. State, Dept. of Highways*, 275 Mont. 352, 361, 912 P.2d 805, 810

(1996). "[A]n award must be reduced when it substantially exceeds that which the

evidence can sustain." *Kiely Const., L.L.C. v. City of Red Lodge*, 2002 MT 241, ¶

102, 312 Mont. 52, 85, 57 P.3d 836, 856–57. "[T]he fundamental purpose of any

tort remedy is to return the plaintiff to his or her rightful position, or the position or

state the party would have attained had the wrong not occurred." *Maloney v.

Home & Inv. Ctr., Inc.*, 2000 MT 34, ¶ 48, 298 Mont. 213, 226, 994 P.2d 1124,

1133.

The jury's compensatory damages award must be vacated or reduced

because it is unreasonable and substantially exceeds any amount that could be

justified by the evidence. Here, Roberts offered no evidence of physical or

economic injury. At most, the only loss suffered by Roberts is an inconvenience

comparable with being stuck in traffic for 11-25 minutes.[4]  Notably, Roberts'

decision to voluntarily and willfully remain on the easement road shows that

Roberts did not experience any significant suffering or loss due to the easement

road being obstructed.  Indeed, if the obstruction of the easement road actually

caused any loss or suffering for Roberts, then he would have used the alternative

egress and driven down the county road to wait for authorities instead of remaining

in place, as he was free to do after Lance Melton called.

   Although the standard for vacating or reducing a compensatory damage

award should not be easily or routinely met, this case presents a quintessential

example of an unreasonable damages award.  There is no evidentiary support for

the position that an 11-to-25-minute delay caused Roberts a $100,000 loss, and

thus the enormity of compensatory damages award shows that it is the result of

passion or prejudice.  Given that Roberts presented no evidence of physical injury

or economic loss, the compensatory damages award should be reduced to the

---

   [4]  Although Roberts testified about reduced enjoyment in certain activities,
he merely correlated such occurrence to the events and issue and did not present a
reasonable explanation as to why or how the obstruction of the easement road
would cause reduced enjoyment of social activities.  Roberts' alleged reduction in
enjoyment of activities eludes verification and measurement.  Permitting such a
tenuous and undeveloped causation rationale means any tort claimant may assert
such damages regardless of the facts at issue.  If, in the complete absence of any
physical or economic harm, such ambiguous and unverifiable mental distress can
spring from a 25 minute dispute and justify the enormous damages award in this
case, then a "reduction in enjoyment" allegation becomes a means for evading any
protection against excessive damages and for transforming any tort claim into a
six-figure claim.

nominal amount of $10 or, at most, set at $500 (which is, as shown below, the maximum fine for the criminal charge most comparable to the tort of false imprisonment).

>    **2.    The Court should reduce the punitive damages award because MCA 27-1-220(3) states that punitive damages may not exceed 3% of a party's net worth.**

Montana Code Annotated § 27-1-220(3) states that "[a]n award for punitive damages may not exceed $10 million or 3% of a defendant's net worth, whichever is less." Notably, "it is the court, not the jury, that applies the statutory limit to a punitive damages verdict under § 27–1–220(3), MCA." *Harrell v. Farmers Edu. Co-op Union of Am.*, 2013 MT 367, ¶ 92, 314 P.3d 920, 940.

As shown by evidence submitted in support of the motion(s) at issue, Adams' net worth is approximately $412,665. *See* Ex. A (Adams Declaration) ¶ 10, Ex. 1 (Personal Financial Statement). Thus, the punitive damages award should be reduced to $12,379.95. *See Harrell*, 314 P.3d at 940 (applying the 3% statutory limit on punitive damages based on evidence of net worth submitted in support of a post-trial motion).

Roberts' arguments regarding net worth do not preclude the Court from applying the statutory cap on punitive damages. In his post-trial brief addressing the punitive damages, Roberts cites *Blue Ridge Homes, Inc. v. Thein*, 2008 MT 264, ¶¶ 60–64, 345 Mont. 125, 191 P.3d 374, to argue that the Court should not

12

apply Montana Code Annotated § 27-1-220(3).  But in *Blue Ridge*, the defendants did not submit any reliable information regarding net worth to the district court. Here, Adams has submitted reliable information regarding net worth in connection with this motion.

As noted in *Harrell*, the Court (not the jury) applies Montana Code Annotated § 27-1-220(3).  As noted in *Blue Ridge*, "to avail himself of the protection provided by § 27–1–220(3), MCA, . . . the defendant must provide *the court* with a truthful and reliable basis to limit the punitive damage award."  ¶ 69 (emphasis added).  In Adams' Declaration (Exhibit A hereto) and his personal financial statement (Exhibit 1 to the Declaration), Adams has provided the Court with reliable information showing that his net worth is approximately $412,665. Accordingly, the Court should apply § 27-1-220(3) and reduce the punitive damages award to $12,379.95.

**3.    The Court should vacate or reduce the punitive damages award under Montana Code Annotated § 27-1-221(7)(c).**

Under Montana Code Annotated § 27-1-221(7)(c), the Court must review the propriety of the jury's punitive damage award by evaluating the following nine factors:

(i)     the nature and reprehensibility of the defendant's wrongdoing;
(ii)    the extent of the defendant's wrongdoing;
(iii)   the intent of the defendant in committing the wrong;
(iv)    the profitability of the defendant's wrongdoing, if applicable;
(v)     the amount of actual damages awarded by the jury;

(vi)    the defendant's net worth;

(vii)   previous awards of punitive or exemplary damages against the defendant based upon the same wrongful act;

(viii)  potential or prior criminal sanctions against the defendant based upon the same wrongful act; and

(ix)    any other circumstances that may operate to increase or reduce, without wholly defeating, punitive damages.

The Court must "clearly state the reasons for increasing, decreasing, or not increasing or decreasing the punitive damages award of the jury in findings of fact and conclusions of law, demonstrating consideration of each of the factors listed in subsection (7)(b)." Mont. Code Ann. § 27-1-221(7)(c).

On May 17, 2021, Roberts moved the Court to issue findings of fact and conclusions of law under Montana Code Annotated § 27-1-221(7)(c). In a brief supporting that motion, Roberts made arguments regarding the nine factors listed above. Doc. 100 at 3-7. The Court issued findings and conclusions the next day (May 18, 2021), before Adams had a chance to file a response to Roberts' arguments regarding the nine factors. As shown below, analysis of the nine factors shows that the punitive damages award is excessive and that the Court should therefore reduce the punitive damages award under Rule 59(e).[5]

---

[5] To be sure, Adams contends that Rule 59(e) provides the proper procedural authority for the Court to order any of the amendments to the judgment addressed in this brief. However, to the extent that any amendment to the judgment would require the Court to revise its findings of fact and conclusions of law issued under Montana Code Annotated § 27-1-221(7), and that Rule 59(e) would not provide an adequate independent basis for such revisions, Adams notes that the Court may also amend the judgment by issuing revised findings and

a.     **The nature and reprehensibility of the Adams' wrongdoing.**

The U.S. Supreme Court has stated that "the most important indicium of the reasonableness of a punitive damages award is the degree of reprehensibility of the defendant's conduct." *BMW of N. Am. v. Gore,* 517 U.S. 559, 575 (1996). "The U.S. Supreme Court has instructed lower courts to determine the reprehensibility of a defendant by considering whether:

> [1. T]he harm caused was <u>physical</u> as opposed to economic; [2.] the tortious conduct evinced an indifference to or a reckless disregard of the <u>health or safety</u> of others; [3.] the target of the conduct had financial vulnerability; [4.] the conduct involved repeated actions or was an <u>isolated</u> incident; and [5.] the harm was the result of intentional malice, trickery, or deceit, or mere accident.

*McCulley v. U.S. Bank of Mont.*, 2015 MT 100, ¶ 45, 347 P.3d 247, 258 (quoting *State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 419 (2003)). "The existence of any one of these factors weighing in favor of a plaintiff may not be sufficient to sustain a punitive damages award; and the absence of all of them renders any award suspect." *Id.*

The reprehensibility factors show that the punitive damages award is excessive and should be reduced. First, Roberts <u>did not suffer any physical harm</u>. Second, obstructing the easement road did not evince an indifference or reckless disregard for Roberts' <u>health or safety</u>. The obstruction did not, and was not

conclusions under Rule 52(b).

intended to, harm Roberts' health or safety—it had the same impact as sitting in traffic for 25 minutes.  Third, considerations of financial vulnerability are not applicable here, and in any event, there is no evidence that Roberts is or was financially vulnerable.  Fourth, the conduct was an isolated incident and did not involve repeated actions.  Fifth, obstructing the easement road was not the result of malice, trickery, or deceit by Adams.  Roberts never alleged any trickery or deceit. And, any obstruction could not stem from any malice because:  (i) Adams did not intend to restrain Roberts when he parked his four-wheeler at the north end of the easement road; and (ii) there is no evidence that Adams parked the four-wheeler on the south end.

Even if Adams did obstruct the roadway himself, such conduct would not be the result of malice or otherwise reprehensible given the physical altercation between Adams and Roberts.  Indeed, the deputy sheriff that arrived on the scene charged Roberts with criminal felony assault and criminal trespass.  While the easement road was blocked, Roberts moved around freely in an open air environment and was never in physical danger.  Roberts aggressively confronted members of Adams' family and used derogatory and inflammatory language against them.  If Adams' conduct were truly reprehensible, he would have been charged instead of Roberts.

Lastly, the fact that Roberts voluntarily and willfully opted to remain on the

property adjacent to Adams' on which the easement road ran because he wanted to be there when the authorities arrived (as elicited in Lance Melton's testimony and Roberts' own testimony) further shows that obstructing the easement road was not reprehensible.

### b.    The extent of the defendant's wrongdoing.

The "extent of wrongdoing" factor weighs in favor of decreasing the punitive damages award.  The only "wrongdoing" alleged is blocking the easement road with a four-wheeler, or possibly by sitting in a chair.[6]  Even assuming *arguendo* that Adams intentionally parked the four-wheeler at the north end of the easement road to restrain Roberts, the extent of that restraint lasted mere minutes. Similarly, assuming *arguendo* that Adams also parked the four-wheeler on the south end of the easement road, the extent of that restraint was at most approximately 25 minutes.  And, at all times, Roberts could have used an alternate egress that was entirely unobstructed.  The fact that Roberts opted to remain on the easement road after the 11-25 minutes expired shows that, at least as far as Roberts was concerned, the extent of the restraint was insignificant.

---

[6]  The Court suggests that Adams may have blocked the easement road by sitting in a lawn chair. Doc. 102 at 2-3 . Notably, however, the focus for Roberts' false imprisonment claim was the alleged obstruction of the easement road with four-wheelers.  In his closing argument, Roberts' counsel repeatedly references the four-wheelers but never mentions Adams sitting in a lawn chair.  In any event, the photo of Adams sitting in a lawn chair indisputably shows that the chair is situated on the edge of the road, and that there is plenty of space for a vehicle to pass.

### c. The intent of the defendant in committing the wrong.

The intent factor weighs in favor of reducing the punitive damages award.  It is unreasonable to attribute an intent to restrain Roberts to Adams given that Adams was dazed when he parked the four-wheeler at the north end of the easement, and he did not park the four-wheeler that obstructed the south end of the easement road.

Even if Adams did restrain Roberts, he did not intend to do so wrongfully.  It is a matter of law that an individual may restrain another per a reasonable belief that the restrained person has committed an offense.[7]  The deputy sheriff's decision to charge Roberts shows that a reasonable person could believe that Roberts had committed an offense and restraint was permissible.

### d. The profitability of the defendant's wrongdoing, if applicable.

The profitability factor weighs in favor of decreasing the punitive damages award.  Even if Adams were responsible for restraining Roberts by blocking the

---

[7] The Court stated that Adams conduct was not related to a citizen's arrest. Doc. 102 at 2.  However, it is immaterial whether Adams knew of citizen's arrest authority or whether he believed his conduct to be an expression of his rights under Montana Code Annotated § 46-6-502.  Regardless of whether executing a citizen's arrest under Montana Code Annotated § 46-6-502 actually formed the basis for one's conduct, that section applies as long as it could have justified one's actions (i.e., even when one restrains another based on some other real or perceived prerogative).  *See State v. May*, 2004 MT 45, ¶ 16, 320 Mont. 116, 120, 86 P.3d 42, 45.

easement road, there is no evidence or claim that Adams profited in any way whatsoever from the obstruction of the easement road.

### e.    The amount of actual damages awarded by the jury.

As shown above in section III.A, under relevant caselaw, the compensatory damages award should be reduced because it is unreasonable and substantially exceeds any amount that can be sustained by the evidence.  Accordingly, the "actual damages" factor weighs in favor of reducing the punitive damages award.

### f.    The defendant's net worth.

Adams' analysis of net worth presented *supra* § III.B applies here.  Adams' financial condition and net worth weigh in favor of reducing the punitive damages award.  Adams' net worth is approximately $412,665.  *See* Ex.  A ¶ 10, Ex. 1. Thus, the punitive damages award is just over double the entire amount of Adams' net worth.  The fact that the Montana legislature limited punitive damages awards to 3% of net worth shows that an award equal to approximately 200% of a party's net worth is unreasonable and inconsistent with Adams' ability to pay the award.

### g.    Previous awards of punitive or exemplary damages against the defendant based upon the same wrongful act.

The "previous awards" factor considers whether the defendant has a history of misconduct.  *In re Estate of Cote*, 2019 MT 10, ¶ 81, 433 P.3d 221, 244 (McKinnon, J., dissenting).  I.e., if there has been a prior award, the amount thereof may bear on the analysis of the deterrent effect of the award at issue.

The previous awards factor weighs in favor of reducing the punitive damages award because there have been no prior damages awards against Adams for false imprisonment.  Thus, there is no history of misconduct which could justify the shockingly large punitive damages award in this case.

        **h.**      **Potential or prior criminal sanctions against the defendant based upon the same wrongful act.**

The "potential criminal sanctions" factor weighs in favor of reducing the punitive damages award.  Criminal unlawful restraint is the most comparable criminal offense to tortious false imprisonment.  In Montana, criminal unlawful restraint carries a penalty of no more than a $500 fine and/or no more than 6 months imprisonment in the county jail—it is a misdemeanor crime.  Mont. Code Ann. § 45-5-301.  Given that the maximum monetary penalty for comparable criminal conduct is $500, the jury's $750,000 punitive damages award is clearly and shockingly unreasonable.

Contrary to Roberts' argument, the matters involving Colt Lackey and the Bolithos are inapplicable.  The charges against Adams in the Lackey case were dropped and had nothing to do with activity on Adams' property.  The Bolitho case involves an assault charge, not a charge for criminal restraint.  There are no pending charges against Adams for criminal restraint.

The Court states that criminal sanctions may be brought against Adams in the Bolitho matter because Adams' conduct "could be construed as false

imprisonment by restricting another's freedom of movement through threats."
Doc. 102 at 6.  But criminal unlawful restraint requires more than simply
restricting freedom of movement—it requires that one "knowingly or purposely
and without lawful authority restrains another so as to interfere substantially with
the other person's liberty."  Thus, even if Adams' conduct could be construed as
restricting the Bolithos' freedom of movement, that would not mean such conduct
occurred "without lawful authority" or "knowingly and purposefully."[8]

 *Potential* criminal sanctions for the same wrongful conduct should be used
for comparative analysis (i.e., comparing the maximum potential criminal penalty
of $500 with the actual award of $750,000).  This factor should not be used to
justify a punitive damages award by evaluating other incidents as a hypothetical
prosecutor and theorizing (based on a limited and incomplete review of the
evidence) whether criminal restraint charges could be brought against Adams even

---

 [8]  The fact that Roberts and the Court purport to justify the punitive damages
award with the Lackey and Bolitho disputes shows that the punitive damages
award is the result of bias, passion, or prejudice.  Those disputes are not related to
this case.  Roberts' counsel argued that the jury should render an award to punish
Adams (at least in part) for the Bolitho dispute, and that an award against Adams
would make sure that people like the Bolithos don't have to deal with having guns
pointed at them.  This dispute did not involve any firearms, much less guns being
pointed at others.  Reciprocally the Bolitho incident did not involve an allegation
of false imprisonment.  The use of firearms, and notion of having a firearm pointed
at oneself, certainly invokes passion.  Roberts' arguments clearly show that he
attempted to draw on that passion to prejudice Adams.  The Court should not
permit the jury in this case to use the judgment to award damages for Adams'
interaction with the Bolithos or Lackey.

though they were not.  If Adams would be presumed innocent of an actual charge of criminal restraint, then a hypothetically-possible criminal sanction that would only result from being convicted of hypothetically-possible charges should not be grounds for upholding a punitive damages award.

> **i.      Any other circumstances that may operate to increase or reduce, without wholly defeating, punitive damages.**

No such factors are applicable here.

**D.      The Court should vacate or reduce the punitive damages award under federal due process guideposts.**

"Punitive damages may properly be imposed to further a State's legitimate interests in punishing unlawful conduct and deterring its repetition." *BMW,* 517 U.S. at 568.  "However, there are procedural and substantive constitutional limitations on [punitive damages] awards.  The Due Process Clause of the Fourteenth Amendment prohibits the imposition of grossly excessive or arbitrary punishments on a tortfeasor." *Seltzer v. Morton*, 2007 MT 62, ¶ 149, 154 P.3d 561 (internal quotation marks omitted) (quoting *Campbell*, 538 U.S. at 416).  Courts must review punitive damage awards for compliance with substantive and procedural federal due process standards by considering three guideposts:  (1) the degree of reprehensibility of the defendant's conduct; (2) the disparity between the punitive damages award and the harm or potential harm suffered by the plaintiff; and (3) the difference between the punitive damage award and civil penalties

authorized or imposed in comparable cases.  *Campbell*, 538 U.S. at 418; *BMW*, 517 U.S. at 574-575).

All three guideposts support Adams' contention that the $750,000 punitive damages award is grossly disproportional to the false imprisonment offense and therefore must be set aside or significantly reduced.  *Cooper Indus., Inc.* 532 U.S. at 434; *BMW*, 517 U.S. at 562.

### 1. The reprehensibility guidepost shows that the punitive damages award is unconstitutional.

The reprehensibility analysis presented *supra* § III.B.1 applies here.  The reprehensibility guidepost is the "most important," *BMW*, 517 U.S. at 575, and should be assessed by reference to five criteria, none of which support the enormous punitive damages award in this case because:

- Roberts suffered no physical injuries.

- Obstructing the easement road with a four-wheeler did not jeopardize Roberts' health or safety.

- Financial vulnerability considerations are inapplicable.

- The 25 minute (at most) obstruction of the easement road was an isolated incident.

- The obstruction of the easement road did not result from malice, trickery, or deceit—a member of the Adams family placed the four-wheeler in the road

after a physical altercation and while law enforcement was in transit.

Roberts never demanded to leave; in fact he voluntarily remained on the

easement road after the four-wheeler was moved.

Simply put, the evidence clearly shows that Adams' conduct was not reprehensible

and thus the punitive damages award is grossly excessive.

### 2. The disparity between the punitive damages award and the harm or potential harm suffered by the plaintiff shows that the punitive damages award is unconstitutional.

The Court must determine "whether there is a reasonable relationship

between the punitive damages award and the harm likely to result from the

defendant's conduct as well as the harm that actually has occurred.'" *BMW,* 517

U.S. at 581.

There is no reasonable relationship between the $750,000 punitive damages

award and the harm that actually occurred. Roberts proffered no evidence of

physical injuries or economic damages. Roberts' only evidence of damages was

his testimony that only that this matter weighed on his thoughts and that he is upset

more easily since all of the events of the lawsuit occurred. Allowing such an

effortless showing of minimal damages to satisfy the second guidepost would

transform the guidepost from a substantive component of due process into an

arbitrary and superficial hurdle.

The only harm that actually occurred is that Roberts was prevented from driving his truck in a certain direction on a particular easement road for at most 25 minutes.  Everyday numerous Americans suffer worse conditions in a daily commute.  There is no reasonable basis that such "harm" merits a penalty of $750,000. Indeed, the fact that Roberts willfully remained on the easement road further indicates that the obstruction of the easement road did not cause Roberts any harm.

There is no reasonable relationship between the $750,000 punitive damages award and the harm that *could have* occurred.  Apart from considering the harm that actually occurred, the second guidepost also requires evaluating the harm "likely to result" from the conduct at issue.  Here, after Roberts grabbed Adams by the neck and threw him to the ground, a member of Adams' family blocked Roberts' truck from traveling on one of two available egresses for at most 25 minutes while law enforcement traveled to the scene.  After evaluating the scene, the deputy sheriff <u>charged Roberts but not did not charge Adams</u> or the family member that blocked the easement road.  It defies common sense to conclude that, in such a scenario, the "likely" outcome of blocking the easement road for at most 25 minutes would be $850,000 of damages.  If the likely outcome of obstructing a gravel road was $100,000 of compensatory damages and $750,000 of punitive

damages, then the comparable criminal charge would carry a maximum monetary penalty significantly greater than a $500 fine.

> **3.** **The third guidepost, which considers the difference between the punitive damages award and other penalties authorized in comparable cases, shows that the punitive damages award is unconstitutional.**

"In addition to considering civil penalties, it is also appropriate [under the third guidepost] to consider potential criminal penalties for the conduct at issue because these indicate the seriousness with which a state views the wrongful conduct." *Seltzer v. Morton*, 2007 MT 62, ¶ 192, 336 Mont. 225, 299, 154 P.3d 561, 613 (citing *Campbell*, 538 U.S. at 428).

As noted *supra* § III.B.8, criminal unlawful restraint is the most comparable criminal offense to tortious false imprisonment. In Montana, criminal unlawful restraint is a misdemeanor that carries a penalty of no more than a $500 fine and/or no more than 6 months imprisonment in the county jail. Mont. Code Ann. § 45-5-301. Here, the punitive damages award is 1,500 times greater than the maximum criminal penalty. The huge difference between the maximum criminal penalty and the $750,000 punitive damages award shows that the punitive damages award is excessive and therefore unconstitutional.

//

//

**E.**     **If the Court does not vacate the compensatory and punitive damages awards or reduce the same to nominal amounts, the Court should order remittitur.**

Given the analysis presented above in connection with Montana Code Annotated § 27-1-221(7)(b) and the federal due process guideposts, if the Court does not vacate the damages awards or reduce the same to nominal amounts the Court should reduce the damages awards by ordering a remittitur.  Given the lack of evidence regarding the value or measure of Roberts' alleged damages, the $500 maximum monetary penalty for a comparable criminal offense provides a reasonable starting point for assessing compensatory and punitive damages, as shown by the fact that it is a consideration highlighted by state and federal law. Thus, if the Court does not grant judgment notwithstanding the verdict or a new trial, or otherwise vacate or reduce the damages awards, the Court should reduce the damages awards via remittitur to $500 for compensatory damages and $3,750 in punitive damages (i.e., 7.5 times compensatory damages).

**F.**     **The Court Should Extend the Automatic Stay Until 30 Days From the Date It Rules on Adams' Motion.**

Under Federal Rule of Civil Procedure 62(a):  (i) execution on the judgment is automatically stayed for 30 days after entry; and (ii) the automatic stay may be extended by the Court.  Adams respectfully requests that the Court extend the automatic stay until 30 days from the date that the Court rules on the motion at issue. This motion presents multiple independent arguments and legal grounds that

may result in a change to the judgment.  Given the possibility that the judgment may be revised, practical considerations regarding execution weigh in favor of extending the stay.

### III.   CONCLUSION

For the reasons stated above, the Court should grant Adams' motion.

RESPECTFULLY SUBMITTED this 4th day of June, 2021.

> */s/ Stephen Bell*
> Stephen D. Bell
> DORSEY & WHITNEY LLP
> Attorney for Brendan E. Adams