IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
MISSOULA DIVISION

| | |
|---|---|
| BRENDAN E. ADAMS, an individual, | CV 18–148–M–DLC |
| Plaintiff and Counter Defendant, | |
| vs. | ORDER |
| HOWARD C. ROBERTS, an individual, | |
| Defendant and Counter Claimant. | |

Before the Court is Defendant and Counter Claimant Howard C. Roberts'
Motion for Award of Attorney's Fees and Costs.  (Doc. 99.)  Specifically, Roberts
seeks $7,066.78 in costs and $77,395.00 in fees after judgment was entered in his
favor following a week-long jury trial.  (Doc. 100-1 at 2.)  Pursuant to District of
Montana Local Rule 54.1, Plaintiff and Counter Defendant Brendan E. Adams
objects to the inclusion of several items in Roberts' Bill of Costs.  (Doc. 104 at 2–
6.)  Adams also argues that Roberts' fee request is overbroad.  (*Id.* at 6–13.)  The
Court held an evidentiary hearing on the fee dispute on August 11, 2021.

For the following reasons, the Court sustains Adams' objections to Roberts'
Bill of Costs and agrees that Roberts' fee request is overbroad.  Accordingly, the
Court reduces the costs and fees due to Roberts from the amounts he requests.

## BACKGROUND

After three years of litigation and on the heels of a five-day trial, the parties are well-familiar with this case's factual and procedural background.  Thus, the Court will only recite those facts necessary to make sense of its ruling on the instant motion.

Almost four years ago to date, an altercation occurred between Adams and Roberts regarding the use of an easement road on Adams' Lake Mary Ronan property.  Adams sued Roberts a year afterward, alleging battery, trespass, and intentional infliction of emotional distress.  Roberts counterclaimed, asserting assault and unlawful restraint or false imprisonment.  Roberts also advanced a justifiable use of force defense against Adams' battery and emotional distress claims.

On May 7, 2021, the Jury returned a verdict in favor of Roberts on his false imprisonment counterclaim.  And, relevant here, the Jury also determined that Roberts' use of force was justified, and that he did not commit a battery against Adams, nor did he intentionally inflict emotional distress upon him.  After the Court entered judgment in favor of Roberts and against Adams, Roberts timely applied for taxation of costs as the prevailing party and moved for an award of attorney's fees pursuant to a Montana immunity statute.

## DISCUSSION

The Court first addresses Adams' objection to Roberts' Bill of Costs before turning to the question of fees.

## I.   Costs

This diversity case is controlled by federal procedural rules, *Hanna v. Plumer*, 380 U.S. 460, 464–65 (1965), and the parties agree that federal law directs the Court's consideration of Roberts' Bill of Costs and Adams' objections thereto. *C.f. Aceves v. Allstate Ins. Co.*, 68 F.3d 1160, 1168 (9th Cir. 1995) (holding that "federal law should control the reimbursement of expert witnesses in federal courts sitting in diversity jurisdiction").  Accordingly, the Court applies the framework set out by the Supreme Court in *Crawford Fitting Co. v. J. T. Gibbons, Inc.*, 482 U.S. 437 (1987) ("*Crawford Fitting*") to guide its analysis.

The starting point, *Crawford Fitting* tells us, is 28 U.S.C. § 1920.  *See* 482 U.S. at 440.  Section 1920 "embodies Congress' considered choice as to the kinds of expenses that a federal court may tax as costs against the losing party[.]"  *Id.* Relevant to the issues presented here, a judge may tax as costs "fees and disbursements for printing and witnesses."  28 U.S.C. § 1920(3).  The next step is 28 U.S.C. § 1821, which specifies the scope of allowances payable to "a witness in attendance at any court of the United States."  Specifically, § 1821 provides that "[a] witness shall be paid $40 per day for each day's attendance," along with

mileage if the witness travels. *Id.* at § 1821(b), (c)(2). Federal Rule of Civil Procedure 54(d) completes the framework, by prescribing that costs "should" be allowed to a prevailing party, "[u]nless a federal statute, these rules, or a court order provides otherwise." Fed. R. Civ. P. 54(d)(1). By its terms, Rule 54 "creates a presumption in favor of awarding costs to a prevailing party, but vests in the district court discretion to refuse to award costs." *Assoc. of Mexican-Am. Educators v. State of California*, 231 F.3d 572, 591 (9th Cir. 2000). So, reading these provisions together, the *Crawford Fitting* Court concluded "that § 1821 specifies the amount of the fee that must be tendered to a witness, § 1920 provides the fee that may be taxed as a cost, and Rule 54(d) provides that the cost shall be taxed against the losing party unless the court otherwise directs." 482 U.S. at 441.

Based on this conclusion, the Court rejected the notion that § 1920's permissive language grants courts discretion to tax costs beyond those specifically enumerated. *Id.* Instead, § 1920 "comprehensively" lists the items a federal court may tax as costs pursuant to Rule 54(d), which includes witness fees. *Id.* at 442. Witness fees, in turn, are set by § 1821(b) at $40 per day. *Id.* The discretion provided by Rule 54(d), *Crawford Fitting* clarifies, is not "a power to evade" the exhaustive scope of § 1920 or the limitations prescribed in § 1821(b). *Id.* "Rather, it is solely a power to decline to tax, as costs, the items enumerated in § 1920." *Id.*

Here, Adams does not dispute that he owes costs as the losing party but

argues that various items in Roberts' Bill of Costs fall outside the scope of the Court's taxing authority. The Court organizes the disputed items, as Adams does, into three categories. Comprising the first category are costs associated with Roberts' expert witness fees. In the second category are costs largely related to Roberts' pretrial motion for sanctions and the April 16, 2021 hearing on the same. (*See* Docs. 43, 57.) The third category relates to costs incurred for the depositions of Roberts and his daughter. The Court takes each category in turn before deciding the total allowable costs.

### A.    Expert Witness Costs

Thomas Henesh testified by deposition to the nature and scope of the easement road where the altercation between Adams and Roberts occurred. Roberts used Mr. Henesh's deposition testimony at trial, pursuant to Federal Rule of Civil Procedure 32, and seeks $2,492.50 in costs associated with obtaining Mr. Henesh's expertise. (Doc. 101 at 14.) This sum includes charges for: reviewing the case and providing an opinion ($400); coordination and discussions ($300); travel ($600); deposition ($700); deposition review ($200); and mileage ($292.50). (*Id.*) Adams objects to taxing anything but $40 as it relates Mr. Henesh. (Doc. 104 at 2–3.)

The Court sustains Adams' objection. "[A]bsent explicit statutory or contractual authorization for the taxation of the expenses of a litigant's witness as

costs, federal courts are bound by the limitations set out in 28 U.S.C. § 1821 and § 1920." *Crawford Fitting*, 482 U.S. at 445. The Local Rules for the District of Montana iterate this rule: "For expert witnesses, the party seeking costs may be entitled to recover *only the statutory fees* and mileage[.]" D. Mont. L.R. 54(b)(2)(B). Thus, the Court is bound by the limit of § 1821(b) as it relates to Roberts' request for reimbursement for fees he paid to Mr. Henesh. And, as already discussed, § 1821 limits witness fees to $40 per day. Accordingly, the Court limits the taxable costs as it relates to Mr. Henesh to $40 as reimbursement for his single-day deposition testimony.

Further, the Court agrees with Adams that Mr. Henesh's $0.65 mileage rate has no legal basis, when the Administrator of General Services has set the 2021 rate per mile at $0.56. *See* 5 U.S.C. § 5704(a). Pursuant to its authority to decline to tax costs enumerated under 18 U.S.C. § 1920, the Court refuses to tax Mr. Henesh's mileage as a cost. *See* Fed. R. Civ. P. 54(d); *Assoc. of Mexican-Am. Educators*, 231 F.3d at 591.

In sum, as it relates to Roberts' request to be reimbursed for Mr. Henesh's expert witness fees, the Court will tax $40 as a cost.[1] Adams' objection is

---

[1] The Court notes that Adams does not object to the Court taxing as a cost the expense of Mr. Henesh's video-taped deposition. (Doc. 101 at 7.) The Court agrees that this cost is taxable pursuant to 28 U.S.C. § 1920(2) ("[f]ees for printed or electronically recorded transcripts necessarily obtained for use in the case") and Local Rule 54.1(b)(1) ("[a]bsent objection, the [Court] will presume it was reasonably necessary for the moving party to obtain video depositions it used at trial"; "[r]eporter's fees will be allowed at the rate paid").

sustained.

### B.    Costs Associated with Motion for Sanctions

In addition to reimbursement for his expert witness fees, Roberts also seeks

fees for five witnesses who testified, or to whom summons were issued to testify,

at the April 16, 2021 pretrial hearing.  (Doc. 101 at 2, 9–13.)  As the parties will

recall, the basis for the hearing was Roberts' motion for sanctions against Adams

for allegedly intimidating a trial witness.  (Docs. 43, 44.)  After the hearing, the

Court issued an order denying the motion.  (Doc. 57.)   Notably, out of the five

witnesses summoned to testify at the hearing, only one—John Kenney—was also

summoned and testified as a trial witness. (Doc. 101 at 13.)

Adams objects to the fees associated with these witnesses, primarily because

Roberts did not prevail on the sanctions issue.  (Doc. 104 at 4–5.)  And, in any

event, Adams argues no costs should be taxed relating to witnesses who did not

testify at trial.  (*Id.*)  While the Court understands the logic of Adams' main

objection, his second argument carries the day.  Thus, the Court need not decide

the scope of Rule 54(d)'s "prevailing party" inquiry.

Instead, it is the discretion Rule 54(d) affords courts to refuse to tax costs

enumerated in § 1920 that controls.  A court's discretion, commentators say, is

found in the Rule's "or a court order" language.  10 Charles Alan Wright et al.,

*Fed. Prac. & Proc.* § 2665 (4th ed.)  Here, the "court order" that undermines Rule

- 7 -

54(d)'s presumption in favor of allowing costs is found in the form of a Local Rule.  Specifically, Local Rule 54.1 limits the scope of the taxable costs enumerated in § 1920, stating, "[c]osts and fees for witnesses . . . are allowed for each day a witness testifies *at trial*."  D. Mont. L.R. 54.1(b)(1)(2)(A) (emphasis added).

So, pursuant to Local Rule 54.1, the Court refuses to tax any costs associated with witnesses who did not testify at trial.  Therefore, no costs will be taxed for the following witnesses' fees: Les Walter, Rhonda Walter, Jane Nolan, and Levi Read. (*See* Doc. 101 at 2.)  For the same reason, the Court will not tax costs related to John Kenney's testimony at the sanctions hearing.  (*Id.*)  However, the Court will allow costs for John Kenney's trial testimony.  Accordingly, Roberts may recover $40 for John Kenney's one-day attendance at trial and $113.12 for his mileage allowance.  28 U.S.C. § 1920(b), (c)(2).  Finally, although Roberts attaches invoices from the process service company to his Bill of Costs, it does not appear that he includes those amounts in his calculations.  (Doc. 101 at 2.)  But to the extent Roberts seeks reimbursement for process server charges, the Court agrees with Adams that no statutory basis exists to support taxing these items as costs. (*See* Doc. 101 at 13.)

To wrap up, the Court sustains Adams' objections as they relate to costs associated with witnesses Les Walter, Rhonda Walter, Jane Nolan, and Levi Read.

The Court also sustains Adams' objection that no costs associated with John Kenney's testimony at the sanctions hearing should be taxed, as well as his objection regarding the cost for serving John Kenney with a trial subpoena. However, the Court overrules Adams' objection regarding costs for John Kenney's trial testimony.  The Court will tax costs for John Kenney's trial attendance in the total amount of $153.12.

### C.   Deposition Costs

Adams' final category of objections relates to the costs Roberts incurred for his deposition and the deposition of his daughter.  (Doc. 104 at 5–6.)  Specifically, Roberts includes in his Bill of Costs an invoice for $539.90, which constitutes the sum of court reporting fees for Howard C. Roberts' deposition and Lindsay Roberts' deposition.  (Doc. 101 at 3.)  Because neither deposition was used at trial, Adams argues that this cost is not taxable.

The Court agrees with Adams that Local Rule 54.1 again controls.  The Rule explicitly states, "[c]osts of depositions taken solely for discovery purposes . . . are not allowed."  L. R. Mont. 54.1(b)(1)(A).  Roberts used neither deposition at trial. Accordingly, the Court exercises its discretion to refuse to tax the costs associated with these two depositions.  Adams' third objection is sustained.

### D.   Total Costs Taxed

Having resolved Adams' objections to Roberts' Bill of Costs, the Court

taxes the following costs, pursuant to 28 U.S.C. §§ 1920 and 1821, Federal Rule of

Civil Procedure 54(d), and Local Rule 54.1:

- Fees of the Clerk: **$600.00**;

- Fees for printed or electronically recorded transcripts necessarily

  obtained for use in the case: **$2,555.80** (transcript fees for depositions

  of Adams and Mr. Henesh); and

- Fees for witnesses: **$193.12** ($40 each in one-day attendance fees for

  Mr. Henesh and John Kenney, plus $113.12 in mileage for John

  Kenney).

Accordingly, the total costs taxed in favor of Roberts and against Adams is

**$3,348.92**.

## II.    Attorney's Fees

"In a diversity case, the law of the state in which the district court sits

determines whether a party is entitled to attorney fees, and the procedure for

requesting an award of attorney fees is governed by federal law." *Riordan v. State

Farm Mut. Auto. Ins. Co.*, 589 F.3d 999, 1004 (9th Cir. 2009) (citation omitted).

Because Adams does not contend that any procedural impropriety bars Roberts'

fee request, *see* Fed. R. Civ. Pro. 54(d)(2)(A), the only issue is Roberts'

entitlement to fees under Montana law.

Montana follows the American Rule: "each party is ordinarily required to

- 10 -

bear his or her own expenses absent a contractual or statutory provision to the contrary." *Mlekush v. Farmers Ins. Exch.*, 404 P.3d 704, 706–07 (Mont. 2017). In this case, Roberts finds statutory footing to deviate from the American Rule in Montana Code Annotated § 27-1-722, which provides that "[t]he prevailing party in an action in which a [use of force] defense is asserted . . . is entitled to costs and reasonable attorney fees."  Adams first urges the Court to segregate those fees to which Roberts' is entitled under §27-1-722 from fees unrelated to the use of force defense.  He next argues that, within that limited scope, reasonableness should further cabin Roberts' fees.

The Court will address each argument in turn.

A.     Segregation

As already noted, Roberts asserted a use of force defense to Adams' claims of battery and intentional infliction of emotional distress (Doc. 64 at 4), and the Jury determined that Roberts prevailed on this defense and on his false imprisonment counterclaim.  However, Adams argues that Roberts' use of force defense was "but a drop in the bucket of Roberts' request for all his attorney's fees totaling $77,395.00."  (Doc. 104 at 8.)  Specifically, Adams points to Roberts' itemized billing statement (Doc. 100-1 at 4–8), stating that it "provides clear evidence that a lion's share of Roberts' attorney's fees was attributed to other counts, motions, discovery, and hearings . . . that are not tied to Mont. Code Ann.

§ 27-1-722" (Doc. 104 at 8).  For those other matters not tethered to § 27-1-722, Adams says that "no attorney fees are allowed."  (*Id.*)

As a general matter, Adams is right.  In cases like this one, which involve multiple claims or theories, "attorney fee awards *must be based* on the time spent by the prevailing party's attorney on the claim or theory under which attorney fees are allowable."  *TCH Builders and Remodeling v. Elements of Constrs., Inc.*, 437 P.3d 1035, 1040 (Mont. 2019) (citation and internal quotation marks omitted) (emphasis in original).  As such, "courts are charged with evaluating attorney effort expended on multiple claims to allocate the fees applicable to each claim, and to award fees based upon that allocation."  *Id.*

Still, "an attorney may be entitled to an entire fee where it is impossible to segregate the attorney's time between claims entitling the party to attorney fees and other claims."  *Blue Ridge Homes, Inc. v. Thein*, 191 P.3d 374, 388 (Mont. 2008).  The Montana Supreme Court cautions that the path to full fees by way the "intertwined" claims exception is narrow.  *TCH Builders and Remodeling*, 437 P.3d at 1040.  For example, the Court has approved intertwined fees where the trial court concluded that the claims at issue "involved *identical* facts and theories."  *Id.* (quoting *Blue Ridge Homes, Inc.*, 191 P.3d at 388–89) (emphasis added).  But before reaching similar a conclusion and granting entire fees, a trial court must undertake a "sincere effort to sort through the claims and assess attorney effort."

- 12 -

*Id.*  Otherwise, the exception would swallow the rule.  *Id.*

To determine whether claims are allocable or intertwined, courts are encouraged to view the proceeding as a whole, rather than to rely solely on the expert testimony offered at the fee hearing.  *Id.*  Because, while "very appropriate and . . . helpful to the fee determination," expert testimony can miss what an overview of the proceeding would reveal.  *Id.* at 1041.  For instance, where the claim tethered to statutory fees is resolved at the summary judgment phase, the court can readily separate attorney fees incurred for that claim from fees incurred litigating the remaining claims, notwithstanding expert testimony that all the claims were otherwise factually or legally intertwined.  *Id.* at 1040 (citing *Mandell v. Ward*, 377 P.3d 1228, 1235 (Mont. 2016)).

Or, perhaps a review of the pre-trial order and the trial might reveal that the case was framed and litigated such that the case is "much more about" other claims than the claim under which attorney fees are allowable.  *Id.* at 1041.  In *TCH Builders and Remodeling*, for example, a sub-contracting construction company, TCH, sought attorney's fees after prevailing against: (1) a property owner on its construction lien bond foreclosure claim; and (2) a general contractor on its breach of contract, breach of the implied covenant, fraud, and punitive damages claims.

437 P.3d at 1037.[2]  The district court held that all attorney fees incurred by TCH

throughout the course of the proceeding were payable by the bond posted by the

property owner, finding that the entire fees incurred "arose from a common set of

facts, and [could not] be segregated into separate categories." *Id.* at 1039.

The Montana Supreme Court reversed, explaining that the trial court

inappropriately limited its inquiry to the fee hearing testimony, where "the only

evidence offered . . . indicated that the fees associated with the lien foreclosure

were inseparable from the fees incurred in litigating the claims against [the general

contractor]." *Id* at 1039–41.  Instead, the trial court should have taken an

overview of the proceedings, which revealed that the trial's substance and verdict

focused on TCH's claims of fraud, breach of the covenant of good faith, breach of

contract, and punitive damages against the general contractor—"claims for which

the jury awarded 90% of the damages." *Id.* at 1041.  Moreover, the court's pretrial

order contained no allegations specific to the construction lien claim, and the

property owner called no witnesses at trial. *Id.* at 1037.  So, although the breach of

---

[2] The Court cites *TCH Builders and Remodeling* to illustrate that while claims may overlap, it does not automatically follow that they are impossible to segregate for attorney fee allocation purposes.  That is to say, the Court understands that in *TCH Builders and Remodeling*, attorney's fees were allowable for claims asserted against both defendants.  Montana's construction lien statute provided the basis for attorney's fees against the property owner.  437 P.3d at 195; *see also* Mont. Code Ann. § 71-3-124(1).  A contract, meanwhile, made fees awardable against the general contractor.  *Id.* at 1036.  The specific issue there, then, was whether the trial court erred "by refusing to segregate fees between those awardable against [the general contractor] under its contract with TCH and those awardable against [the property owner] pursuant to TCH's lien claim." *Id.* at 1040.

contract claim indeed "overlapped" with the property owner's lien obligation, an overview of the record showed that "significant trial effort was unrelated to the lien issue." *Id.* Accordingly, the case was sent back to the trial court to carefully evaluate attorney effort expended on each claim and allocate the fees applicable to each. *Id.* at 1040.

Here, while the facts underlying the parties' claims, counterclaims, and defenses certainly overlap, the Court does not find it wholly "impossible" to segregate Roberts' counsel's time between the justified force defense and the other claims. *See Blue Ridge Homes, Inc.*, 191 P.3d at 388. To be sure, and as Roberts' expert testified at the fee hearing, the justifiable force defense is factually and legally entangled with the other claims and counterclaims in this case to a greater degree than the lien issue was tethered to the other claims in *TCH Builders and Remodeling*. However, taking an overview of the proceedings, along with Adams' specific objections to Roberts' itemized billing statement (Docs. 104 at 11; 104-1), the Court finds allocation possible, albeit imperfect.

To start, though, the Court cannot agree with Adams' assessment that Roberts' justifiable force defense was "but a drop in the bucket." (*See* Doc. 104 at 8.) The Court oversaw all pretrial proceedings and sat through the entire trial. From this perspective, the Court understands how the parties litigated and tried this case, which hinged on whether the Jury believed Adams' story: Roberts trespassed

on Adams' property, and then "beat" Adams after Adams approached him about the trespass.  And, Adams purportedly incurred substantial medical bills because of the alleged "beating."  The Jury didn't buy it, however, and determined that if Roberts indeed used any force against Adams, it did not constitute a battery, and in any event, it was justified.

The arguments and evidence at trial foreshadowed this result.  Counsel for Roberts spent substantial time eliciting testimony that supported his theory that Adams was the noncredible aggressor and undercut Adams' theory that Roberts lodged an unprovoked attack.  That neither Adams nor Roberts testified on the first day of trial, as Adams emphasizes in his objections to the itemized billing statement (Doc 104-1 at 3), does not mean Roberts' counsel did not develop his central theory with the witness who did testify that day: Adams' wife, Sharon. Indeed, the Jury must have disregarded or disbelieved Sharon Adams' account of events to determine that her husband was not the victim in the altercation. Accordingly, the Court overrules Adams' objection to fees associated with the first day of trial.  (*See* Doc. 104-1 at 3, ln. 27–28.)

For similar reasons, the Court finds it impossible to segregate many of the items to which Adams objects between effort expended for the justifiable force defense and other claims and counterclaims.  For example, Adams objects to fees associated with Roberts' preparing and filing the Answer and Counterclaim.  (Doc.

104-1 at 2, ln. 1–2.)  But the Answer and Counterclaim contains explicit reference to Roberts' affirmative defense of justifiable force.  (Doc. 4 at 4.)  In other words, from the jump, Roberts began developing his case theme that he was attacked by Adams, and any force he used in response was justified.  The facts and legal theories underlying the claims, counterclaims, and defenses are inextricably linked, such that to advance or defend against one is to advance or defend against another.

Many other entries to which Adams objects fall into the same category: while they may not reference attorney effort expended on the justifiable force defense specifically, they cannot be divorced from it.  These include "phone calls with witnesses," "review[ing] police records regarding other incidents," and "preparing trial subpoenas."  (Doc. 104-1 at 2–3.)  Again, the facts and theories underlying the claims, counterclaims, and justifiable force defense are so intertwined that the Court cannot logically segregate the effort expended to advance one from the time spent to defend another.  Put another way, to call a witness to discuss Roberts' assault counterclaim would necessarily involve delving into whether the Adams' alleged assault justified Roberts' use of force against him.

The Court will not walk through each claimed fee that falls into the above "intertwined" category.  *See TCH Builders and Remodeling*, 437 P.3d at 1041 ("[A] court need not approve or reject claimed fees in entry-by-entry detail[.]").  Instead, suffice it to say that the Court finds many entries to which Adams objects

involve intertwined issues for which Roberts is entitled to full fees.  (Doc. 104-1 at

2, lns. 1–7, 20–30, 35–36; 104-1 at 3, lns. 16–22, 24–28; 104-1 at 4, lns. 1–7.)

   With that said, however, the Court agrees with Adams that a significant

number of items enumerated Roberts' billing statement are unrelated to advancing

Roberts' justifiable force defense.  First, Roberts' only expert, Mr. Henesh, had

nothing to do with the justifiable force defense.  Thus, his time expended preparing

expert disclosures can be easily segregated from his efforts for which fees are

allowed.  (Doc. 104-1 at 2, lns. 8–10.)  Second and similarly, fees associated with

deposing Adams' medical experts and arguing for their exclusion are unrelated to

the defense for which fees are allowable.  (*Id.* at 2, lns. 8–19.)  Third, nothing

about Roberts' unsuccessful pretrial motion for sanctions operated to advance his

overarching theory that Adams attacked him, and that he only acted to protect

himself.  Thus, the Court sustains Adams' objection to any entry associated with

the sanctions issue.  (*Id.* at 2, lns. 31–34, 37; Doc. 104-1 at 3, lns. 1–15.)  Finally,

the Court sustains Adams' objection regarding the effort expended to respond to

the "trespass issue" in Adams' trial brief.  (Doc. 104 at 3, ln. 23.)  Any relevance

Roberts' alleged trespass bears to his justified force defense is marginal, at best.

   Accordingly, out of the $28,012.80 in fees that Adams contends are

unrelated to Roberts' use of force defense, the Court agrees as to $13,075.  Given

testimony proffered from Mr. Robert's own expert, Del Post, the Court will

additionally subtract from the total amount of attorneys' fees claimed, $1,650 in fees incurred during the punitive damages aspect of the case and $62.50 in fees expended moving for leave to have a witness testify by zoom that did not end being called at trial.  Thus, pursuant to the general rule that "attorney fee awards *must be based* on the time spent by the prevailing party's attorney on the claim or theory under which attorney fees are allowable," *TCH Builders and Remodeling*, 437 P.3d at 1040, the Court reduces Roberts' fees from $77,395.00 to $62,607.50.

From that reduced amount, the Court turns to the issue of reasonableness.

## B.    Reasonableness

As already stated, Montana Code Annotated § 27-1-722(4) provides that "[t]he prevailing party in an action in which a [use of force] defense is asserted . . . is entitled to costs and reasonable attorney fees."  What is "reasonable," the parties agree, "must be ascertained under the facts of each case."  *Plath v. Schonrock*, 64 P.3d 984, 991 (Mont. 2003).  In *Plath*, the Montana Supreme Court enumerated factors that courts should use as guidelines to determine what constitutes reasonable fees:

> (1) the amount and character of services rendered; (2) the labor, time and trouble involved; (3) the character and importance of the litigation in which the services were rendered; (4) the amount of money or the value of the property to be affected; (5) the professional skill and experience called for; (6) the attorneys' character and standing in their profession; and (7) the results secured by the services of the attorneys.

*Id.* (citations omitted).  As comprehensive as these factors seem, they are not

exclusive. *Id.* Moreover, competent evidence must be introduced at an evidentiary hearing "to demonstrate the proper amount of fees due." *Rossi v. Pawiroredjo*, 85 P.3d 776, 781 (Mont. 2004).

Here, counsel for Roberts called Del Post as an expert witness to testify to the scope and reasonableness of his fee request. As discussed above, the Court finds that many of Roberts' fees fall within the scope of § 27-1-722(4) under the intertwined claim exception—in sum, $62,607.50. However, the evidence presented at the fee hearing failed to convince the Court that the entire sum of fees testified to by Del Post constitutes "reasonable" attorney fees considering the *Plath* factors.

First, while this case spanned three years, its duration is attributable to external conflicts unrelated to the merits of this case. (*See, e.g.,* Doc. 15.) That is, the relatively long lifespan of this case says little or nothing about the "amount" or "character" of services rendered. Indeed, the record reveals limited periods of activity since the case was filed in 2018 and few docket entries when compared to other civil matters that make it to trial. The Court understands why. Although this case involved multiple claims, counterclaims, and defenses, the issues presented are reminiscent of those presented to first-year law students. They are questions of intentional tortious conduct, and the available defenses thereto. In other words, this was not a case of legal complexity or novelty: it was a case of straightforward

legal principles and lawyers' ability to apply facts to them.  Thus, the Court finds the first *Plath* factor weighs in favor of reducing Roberts' fee amount.

For the similar reasons, the second and third *Plath* factors dictate a reduction to bring Roberts' fees within the realm of reasonable.  Again, the labor, time and trouble involved in litigating a case of marginal legal complexity, while not nothing, do not weigh in favor of allowing the maximum fees statutorily allowable. Neither party moved for summary judgment.  And apart from a straightforward motion to exclude experts and causation testimony for procedural deficiencies (Doc. 18), this case was devoid of the usual discovery fights that infect the civil bar.  True, as trial came around the corner, the parties' motions practice heated up, but not to an overwhelming degree.  Thus, the relative labor, time and trouble to litigate and try this case, compared to other civil matters, weigh in favor of reducing Roberts' requested fee amount.

Further, as noted here and at the conclusion of the sanctions hearing, this litigation cannot be fairly characterized as "important."  While undoubtedly the resolution of this case matters to the parties, it cannot be ignored that a relatively brief altercation between two adult men lies at the core of this case.  Nothing about this matter or its outcome will change the law or the lives of anyone apart from those of Roberts and Adams.  The third *Plath* factor weighs in favor of finding a reasonable fee amount below the sum requested by Roberts.

- 21 -

The final four *Plath* factors are largely intertwined.  It cannot be disputed that Roberts' counsel executed his case superlatively.  The Jury awarded Roberts $100,000 in compensatory damages and $750,000 in punitive damages in a case that hinged primarily—if not solely—on whether the attorneys could establish their respective client's credibility and prove the other party's deceit.  While perhaps the *legal* issues presented in this case did not call for supreme professional skill and experience, the *factual* problems called for a trial lawyer with exceptional acumen to deliver the result that Roberts' counsel did.  Indeed, as Adams' counsel repeated throughout his closing argument, Mr. Wagner demonstrated in this trial why he may be one of the best trial lawyers in Missoula, Montana.  Accordingly, the Court finds that the fourth, fifth, sixth, and seventh *Plath* factors weigh in favor of granting Roberts' a substantial portion of his requested fees.

Balancing the first three *Plath* factors—which weigh in favor of reduction—against the second four factors—which weigh in favor of finding substantial fees reasonable—the Court concludes that a fee amount of $43,825.25 is reasonable. This sum constitutes a thirty percent reduction from the $62,607.50 allowable pursuant to statute.  That is, for each *Plath* factor weighing in favor of reduction, the Court reduced the allowable fees by ten percent.  Under the facts of this case, and after considering the evidence presented at the fee hearing, this **$43,825.25** fee award is reasonable

## ORDER

For the foregoing reasons, IT IS ORDERED that:

(1)     Robert's motion for costs (Docs. 99, 101) is GRANTED in part and DENIED in part, as described above.  In total, the Court will tax $3,348.92 in costs against Adams.

(2)     Robert's motion for attorney's fees (Doc. 99) is GRANTED in part and DENIED in part, as described above.  Roberts is entitled to recover $43,825.25 from Adams in attorney's fees.

DATED this 11th day of August, 2021.

Dana L. Christensen, District Judge
United States District Court

- 23 -